UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DINO N. THEODORE<br>and ACCESS WITH SUCCESS, INC.,<br>Plaintiffs<br><br>v.<br><br>WAL-MART STORES, INC.,<br>Defendant | CASE NO.: 1:15-cv-319 |

## COMPLAINT

This action is brought by the plaintiffs to enforce Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12182(b)(2), against the defendant, Wal-Mart Stores, Inc. ("Wal-Mart" or the "defendant") The plaintiffs, Dino N. Theodore and Access with Success, Inc. ("AWS") allege that the defendant has violated and continues to violate Title III of the ADA. The plaintiffs seek an Order in the form of a Consent Decree, which will require Wal-Mart to install accessible point of sale ("POS") devices for consumers with mobility disabilities who use wheelchairs, such as Mr. Theodore, at several of Wal-Mart's retail stores in New Hampshire, including Wal-Mart's retail stores in Plaistow (Store #1930), Derry (Store #1753), Salem (Store #2142), and Hudson (Store #1785).

## PARTIES

1. The plaintiff, Dino N. Theodore, age 55, is paralyzed from the chest down and uses a wheelchair for ambulation. He drives a car equipped with hand controls.

2. Mr. Theodore resides in Dracut, Massachusetts. He is an attorney employed by the Department of Industrial Accidents in Massachusetts. He has been admitted to practice law in Massachusetts since 1993.

3. Mr. Theodore is a qualified individual with disabilities within the meaning of all

applicable statutes, including the ADA, and is disabled within the meaning of the ADA in that he is substantially limited in performing one or more major life activities, including but not limited to walking and standing.

4.      Mr. Theodore is a wheelchair user who regularly shops at the Wal-Mart stores located in cities and towns near his home in Dracut.  He is the account holder of a Wal-Mart Credit Card. Mr. Theodore shops at Wal-Mart because of Wal-Mart's low prices. At checkout, Mr. Theodore cannot see the display screen of the POS terminals at the Wal-Mart stores without straining and cannot independently access the terminals. Mr. Theodore was and currently is directly harmed by Wal-Mart's failure to provide accessible POS terminals.

5.      The plaintiff, AWS, is a non-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts.  Its members are able-bodied individuals and qualified individuals with disabilities as defined by the ADA.  Scott M. Frotton is a founding member of AWS.  Mr. Frotton has T7 paraplegia secondary to a spinal cord injury sustained in a construction site accident in 1998.  He always uses a wheelchair for ambulation.  He drives a vehicle equipped with hand controls.  Scott Frotton's wife, Tammy Frotton, is a founding member of AWS.  She is not disabled. Mr. Frank Salafia is a member of AWS.  He is hearing impaired and has a total loss of vision in one eye.  G. David Iverson is a member of AWS.  He is paraplegic due to a spinal cord injury sustained in 1987.  He always uses a wheelchair for ambulation.  He drives a vehicle equipped with hand controls.  Michelle A. Paletta is a member of AWS.  She sustained ruptured lumbar discs in a car accident many years ago and the condition of her lumbar spine has degenerated such that she can stand for brief periods of time, but is not able to walk without assistive devices.  She almost always uses a scooter for ambulation. Raymond J. Aziz is a member of AWS.  Mr. Aziz wears braces on both ankles and frequently

walks with a cane. His condition is secondary to adult onset of diabetes. Robert Brearley is a member of AWS. He is paraplegic due to a fall from a height in 1980. He cannot walk and always uses a wheelchair for ambulation. Alex Malvers is a member of AWS. Alex Malvers has cerebral palsy. He always uses a wheelchair for ambulation. Sidney R. Harris is a member of AWS. He sustained crushing leg injuries in a workplace accident in 1978 and was confined for many years to a wheelchair. Currently, Mr. Harris ambulates with the assistance of a cane.

6. The individually named plaintiff, Dino N. Theodore, is a member and a director of AWS. All of the above-named members of AWS, except for Tammy Frotton, are qualified individuals with disabilities within the meaning of the ADA and all other applicable federal and state statutes.

7. AWS is a civil rights group organized for charitable and educational purposes by individuals with disabilities to advocate for the integration into society of disabled persons and equal access to all services, activities, programs, resources and facilities available to non-disabled persons. Its members are predominantly, but not exclusively, individuals with various physical disabilities impairing mobility, speech, vision, and hearing. AWS is dedicated to supporting people with disabilities in their efforts to lead independent lives. One of the primary purposes of AWS is to assure that private places of public accommodation are accessible to, and usable by persons with disabilities. AWS works to ensure that all aspects of human experience are accessible to people with disabilities. Through its participation in lawsuits, AWS intends to send a clear message to the public that public accommodations segregated on the basis of persons' disabilities are unlawful.

8. Title III of the ADA permits private individuals to bring lawsuits in which they can obtain court orders to stop discrimination on the basis of disability.

9. AWS and its members have suffered direct and indirect injury as a result of the defendant's actions or inactions as described herein. AWS also has been discriminated against because of its association with Dino Theodore and his claims. The defendant's failure to comply with the ADA adversely affects the organizational purpose of AWS.

10. The defendant, Wal-Mart, is a Delaware corporation registered to do business inNew Hampshire. Wal-Mart is subject to personal jurisdiction in this District. Wal-Mart has been and is committing the acts alleged herein in the District of New Hampshire.

11. The defendant, Wal-Mart, is the world's largest retailer and private employer. Wal-Mart is a public company whose stock is traded on the New York Stock Exchange under the symbol "WMT." Wal-Mart is a Delaware corporation with 27 retail stores throughout New Hampshire. Wal-Mart's corporate headquarters are located in Bentonville, Arkansas. Wal-Mart operates retail stores doing business in New Hampshire as Wal-Mart, Wal-Mart Supercenters and Wal-Mart Discount Stores.

12. By January 26, 1992, public accommodations, such as the Wal-Mart retail stores at issue in this case, were required to conform to 28 C.F.R. Part 36, "Americans with Disabilities Act Accessibility Guidelines."

13. As of March 14, 2012, public accommodations and commercial facilities were required to follow the requirements of the 2010 Standards for Public Accommodations and Commercial Facilities: Title III, including both the Title III regulations at 28 CFR part 36, subpart D; and the 2004 ADAAG at 36 CFR part 1191, appendices B and D.

14. By definition, the Wal-Mart retail stores at issue in this case are places of public accommodation subject to the requirements of Title III of the ADA and the 2010 Standards. 42 U.S.C. §12181(7)(E).

## SYNOPSIS OF A CAUSE OF ACTION UNDER THE ADA

15. Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

16. Congress found that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5).

17. After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals and to integrate them "into the economic and social mainstream of American life." S. Rep. No. 101-116, p. 20 (1989); H. R. Rep. No. 101-485, pt. 2, p. 50 (1990).

18. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

19. In order to make a prima facie case under Title III of the ADA, a plaintiff must prove that (1) he has a disability, (2) the defendant's facility is a place of public accommodation, (3) and he was denied full and equal treatment because of his disability.

20. The ADA's public accommodations provisions also permit an individual to allege discrimination based on a reasonable belief that discrimination is about to occur.

21. A plaintiff with a disability need not engage in the "futile gesture" of attempting to gain access to each and every feature of a facility or place of public accommodation where access barriers are known to exist and where the owner or operator does not intend to comply with the provisions of the ADA. 42 U.S.C. § 12188(a)(1).

22. Title III of the ADA prohibits public accommodations from providing an individual, on the basis of a disability or disabilities of such individual, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(iii).

23. Title III provides that goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual. 42 U.S.C. § 12182(b)(l)(B).

24. The ADA prohibits not only outright exclusion, but also unnecessary differential treatment. 42 U.S.C. §§ 12182(a)-(b)(1)(A).

25. Title III defines discrimination to include the failure of a public accommodation to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently that other individuals because of the absences of auxiliary aids and services; and to remove architectural barriers that are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. §12182(b)(2)(A)(ii)-(iv).

26. Title III further defines discrimination as a public accommodation's failure to design and construct facilities that are readily accessible to and usable by individuals with disabilities (later

6

than 30 months after July 26, 1990) and, with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to the maximum extent feasible the altered portions of the facility are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(1)-(2).

27. The Wal-Mart retail stores in Plaistow, Derry, Salem, and Hudson must be, but are not, in compliance with the ADA and the 2010 ADA Standards.

## JURISDICTION AND VENUE

28. The Court has primary jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343 in that this action arises under the laws of the United States and the defendant is subject to personal jurisdiction.

29. Venue is proper in this Court under 28 U.S.C. § 1391, the claim having arisen in the District of New Hampshire.

## COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

30. Mr. Theodore most recently shopped in the summer of 2014 at the Plaistow Wal-Mart (Store #1930). On August 6, 2015, he shopped at the Derry store and at the Hudson store. On many other occasions, he has shopped at other Wal-Mart stores in Massachusetts and New Hampshire.

31. Mr. Theodore intends to visit Store #1930 again as well as the Derry Store #1753, the Salem Store #2142, and the Hudson Store #1785 to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at those places of public accommodation, but he will be unable to do so on an equal basis with able-bodied persons because of his disability and due to the physical barriers to access and ADA violations that exist

at the aforesaid Wal-Mart locations that preclude and/or limit his access to the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including inaccessible POS devices.

32. Independent of his personal desire to have access to places of public accommodation free of illegal barriers to access, Mr. Theodore also acts as a "tester" on behalf of himself, AWS, and other persons with disabilities, for the purpose of discovering encountering, and engaging discrimination against disabled persons in public accommodations.

33. When acting as a "tester," Mr. Theodore employs a routine practice. He personally visits the public accommodation when he knows or where it has been reported to him that illegal barriers to access exist; engages all of the barriers to access, or at least all of those that he is able to access; and tests all of those barriers to access to determine whether and the extent to which there are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to the premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of other subsequent visits for personal reasons, Mr. Theodore also intends to visit the premises annually to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the premises.

34. In this instance, Mr. Theodore, in his individual capacity for personal reasons, and as a "tester," visited the Wal-Mart stores in question, encountered barriers to access at those locations, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access.

35. The POS devices at the Wal-Mart stores at issue are located at individual checkout stands at the front end of the stores and are used for most customer transactions. POS terminals allow

customers to input private information such as their Personal Information Number (PIN); submit debit or credit card data by swiping a payment card; verify, authorize or cancel a transaction; submit a signature; provide the consumer with the option to select to receive cash-back from their account; select an amount of cash back to be provided; and perform other associated tasks such as using coupons and authorizing charitable donations, which involve inputting, correcting, cancelling or entering information that is personal or affects access to personal information or resources.

36. The POS devices at Wal-Mart's Plaistow Store #1930, its Derry Store #1753, its Salem Store #2142, and its Hudson Store #1785 are mounted at inaccessible heights so that customers in wheelchairs cannot see the display screens or reach the terminals without straining.

37. At the Plaistow Store #1930, the Derry Store #1753, the Salem Store #2142, and the Hudson Store #1785, Wal-Mart never has provided accessible POS terminals for its mobility-impaired customers even though accessible designs are readily available and affordable. Wal-Mart continues to deny patrons in wheelchairs full and equal access to its goods and services despite its vast resources and its ability to provide accessible POS devices.

38. The POS devices at the New Hampshire Wal-Mart stores at issue include a type of LCD (liquid crystal display) or LED (light emitting diode) display, which provides information necessary to the transaction in a visual format (hereafter "display screen"). To process their payments securely and independently, customers generally need to be able to see all of the information on the POS screen.

39. As a result of the height and positioning of POS terminals at the Wal-Mart stores identified above, to successfully complete a transaction, many customers in wheelchairs, including Dino Theodore, are forced to struggle with inaccessible equipment during the

purchase/check-out process.

40. Often, customers with disabilities, such as Mr. Theodore, must strain to try to see the information displayed on the POS screens and enter the necessary PIN or sign for a credit card transaction.

41. Conducting debit and credit card transactions at the Wal-Mart stores at issue often requires customers in wheelchairs to request assistance from cashiers to input private information and/or provide signatures on their behalf.

42. The POS devices at the New Hampshire Wal-Mart stores at issue cannot be tilted, adjusted, or moved to provide access to customers in wheelchairs. An LCD or LED display screen and control panel that could be tilted up and down or which could be removed from its mount would facilitate access for people who use wheelchairs.

43. Customers with disabilities, such as Dino Theodore, who do not wish to reveal private information to cashiers or have cashiers sign on their behalf are inhibited from using the POS terminals at checkout stands at the Wal-Mart stores at issue.

44. At the Derry store, Mr. Theodore purchased items using the self-pay terminals which require the customer to scan his products on a scanner and reach across the terminal to enter commands on a touchpad and to swipe a credit card or insert currency.

45. The self-pay terminals at all of the Wal-Mart stores where they are offered (including the self-pay terminal that Mr. Theodore tested) are not in compliance with the forward reach and side reach distances specified in Standards 308.2 and 308.3 of the 2010 ADA Standards for Accessible Design, respectively. The self-pay terminals also do not comply with Standard 707.

46. The Department of Justice has stated that "[i]ndividuals with disabilities who engage in financial or other transactions should be able to do so independently and not have to provide

third parties with private financial information, such as a personal identification number (PIN)." 75 Fed. Reg. 43452, 43458 (July 26, 2010).

47. The ADA does not provide specific guidance for all of the different types of POS devices available on the market, but Standard 707 of the 2010 ADA Standards for Accessible Design establishes technical requirements for similar devices, notably, automated teller machines (ATMs).

48. Standard 707, which covers ATMs, requires the following:

- A clear floor or ground space complying with Standard 305. (Standard 707.2);

- Operable parts that comply with the reach range requirements of Standard 309. (Standard 707.3); and

- A display screen that is visible from a point located 40 inches above the center of the clear floor space in front of the machine (Standard 707.7.1).

49. Likewise, Standard 904, "Check-Out Aisles and Sales and Service Counters," provides guidance in establishing the following requirements:

- A counter surface height that is 38 inches maximum above the finish floor or ground. (Standard 904.3.2);

- To facilitate a parallel approach to the counter, a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor must be provided. A clear floor or ground space complying with Standard 305 must be positioned for a parallel approach adjacent to the 36-inch minimum length of counter. (Standard 904.4.1); and

- To facilitate a forward approach, a portion of the counter surface that is 30 inches long minimum and 36 inches high maximum must be provided. Knee and toe space complying with Standard 306 must be provided under the counter. A clear floor or ground *space* complying with Standard 305 must be positioned for a forward approach to the counter. (Standard 904.4.2).

50. The 2010 ADA Standards are only one component of Title III. The fact that there is no specific ADA Standard governing such POS devices does not mean that the manner in which Wal-Mart deploys those devices is in compliance with the ADA. Under 28 CFR § 36.303, "A

public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." Installing accessible POS devices at Wal-Mart would be readily achievable and would greatly assist persons with mobility disabilities, such as Mr. Theodore, without significant difficulty or expense to Wal-Mart.

51. The conveyor belts at the checkout aisles at the New HampshireWal-Mart stores at issue have a built-in plastic check-writing surface that pivots in and out of a slot on the side of the conveyor belt assembly. The writing surfaces are identified by a decal bearing the international symbol of accessibility.

52. The writing surfaces do not comply with Standard 904.3.3 and the maximum work surface height of 28 inches under Standard 902.3.

53. The writing surfaces do not mitigate the discriminatory effect of Wal-Mart's having positioned all POS devices at a height greater than the maximum work surface height (28 inches) allowed under Standard 902.3.

54. Wal-Mart has for years known of the discriminatory impact of its inaccessible POS terminals for its customers with mobility disabilities.

55. For example, on July 25, 2012, a California disability rights organization and two individuals with mobility disabilities sued Wal-Mart Stores, Inc. in *Center for Independent Living, Inc., et al. v. Wal-Mart Stores, Inc.*, U.S. District Court, Northern District of California, Case No. 12-3885, alleging that Wal-Mart violated and continues to violate the ADA because its

POS machines in California are inaccessible to customers who use wheelchairs.

56. The plaintiffs in the *Center for Independent Living* lawsuit seek class action status on behalf of "all persons with disabilities who use wheelchairs and scooters as mobility aids who have been or who are currently being denied equal access to [POS] terminals at Wal-Mart stores in California." *Center for Independent Living, Inc., et al. v. Wal-Mart Stores, Inc.*, U.S.D.C., N.D. Cal., Case No. 12-3885, DN 1.

57. The *Center for Independent Living* plaintiffs also seek a permanent injunction requiring Wal-Mart to "implement policies and procedures [to] ensure that individuals in wheelchairs or scooters have nondiscriminatory, full and equal access to POS terminals." *Center for Independent Living, Inc., et al. v. Wal-Mart Stores, Inc.*, U.S.D.C., N.D. Cal., Case No. 12-3885, DN 1.

58. The *Center for Independent Living* case has been stayed by stipulation and court order since June 2013 while the parties have been exploring settlement. "This ongoing stay has allowed the parties to make significant progress toward a resolution of this matter and to explore options related to POS device mounts that are agreeable to all parties." *Center for Independent Living, Inc., et al. v. Wal-Mart Stores, Inc.*, U.S.D.C., N.D. Cal., Case No. 12-3885, DN 48.

59. Even if the parties in *Center for Independent Living* eventually achieve their stated goal of settling the case, their private settlement would in no way obligate Wal-Mart to bring the POS devices in its New Hampshire stores into compliance with the ADA. The plaintiffs in this case are different, as is the cause of action, the place where the cause of action arose, and the relief sought.

60. Wal-Mart has engaged in an ongoing, systemic pattern and practice of discrimination against mobility-impaired customers, such as Mr. Theodore, who shop in the Wal-Mart stores

13

named above. This discrimination includes, *inter alia*, failing to ensure such individuals have full and equal access to POS terminals so that they may independently and easily use credit or debit cards to conduct transactions or take advantage of other services available at POS terminal when purchasing retail goods.

61. Mr. Theodore has suffered an injury in fact as a result of Wal-Mart's non-compliance with the ADA. His status as a "tester" and his expectation to visit the Plaistow, Derry, Salem, and Hudson stores in the future as a tester or for personal reasons creates a real and immediate threat of future harm.

62. Wal-Mart has failed to take those steps that may be necessary to ensure that individuals with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

63. On information and belief, the plaintiffs allege that there are other ADA violations present within Wal-Mart's Hudson, Derry, Plaistow, and Salem stores that will be more fully alleged upon discovery and further inspection.

64. The defendant's conduct constitutes ongoing and continuous violations of the ADA and, unless restrained from doing so, the defendant will continue to violate the ADA. Said conduct, unless enjoined, will continue to inflict injuries for which the plaintiffs have no adequate remedy at law.

65. The injunctive relief requested below will redress the plaintiffs' injury.

WHEREFORE, the plaintiffs respectfully request that the Court will order the defendant to alter its Hudson, Derry, Plaistow, and Salem stores and amend its policies to make those stores readily accessible to and useable by individuals with disabilities on an equal basis with non-disabled persons to the extent required by the Americans with Disabilities Act and Subpart E of

28 C.F.R. Part 36 and award the plaintiffs appropriate attorneys' fees and costs of this suit as provided by 42 U.S.C. § 12205.

          Respectfully submitted,
          The Plaintiffs, DINO THEODORE, et al.,

          By their Attorneys,


          /s/Nicholas S. Guerrera
          Nicholas S. Guerrera, NH Bar ID No. 6520
          Shaheen Guerrera & O'Leary, LLC
          Jefferson Office Park
          820A Turnpike Street
          North Andover, MA 01845
          (978) 689-0800

Dated: 08/07/2015          nguerrera@sgolawoffice.com